## STANBROUGH, Curator, *v.* EVANS.

Where one to whom slaves sold at the suit of a second mortgagee are adjudicated, enters into a bond to produce them whenever required for the purpose of being sold under the first mortgage, and subsequently dies, a purchaser of the slaves at a probate sale of his succession, will acquire only the rights of the deceased, and will be bound by his obligation to deliver the slaves. Such a purchaser cannot be considered a third possessor; nor can he require the original vendor to resort to an hypothecary action to enforce his mortgage.

APPEAL from the District Court of Madison, *Selby,* J. *Bemiss, Stacy* and *Sparrow,* for the plaintiff. *Pierse,* appellant, *pro se.* No counsel appeared for the defendant. The judgment of the court was pronounced by

KING, J. At a probate sale of the succession of *Jesse Harper,* deceased, the defendant, *Evans,* became the purchaser of four slaves; and, to secure the payment of the notes given for their price, the slaves, together with a tract of land, were specially mortgaged. The plaintiff obtained an order for the seizure and sale of the mortgaged property, which was executed by making a levy on the 3d of December, 1842; and on that day the slaves were sold, notwithstanding this seizure, in virtue of writs previously issued under other judgments against *Evans,* and adjudicated to *Walker.* On the 5th of December, two days after the sale, *Walker* entered into a bond, in which he obligated himself to produce the slaves whenever thereto required, to be sold under the order of seizure of *Stanbrough,* or the judgment of *Kinnard,* also a creditor of *Evans.* Shortly after *Kinnard* enjoined *Stanbrough's* proceedings, and the writ remained suspended until 1845, when, by order of the plaintiff's counsel, it was returned, and a second was issued, Pending the injunction *Walker* died. At the probate sale of his property the intervenor appeared in the name of *Stanbrough,* and forbid the sale of the slaves, notwithstanding which they were adjudicated to himself and *Wallace* for $190 50. . *Pierse* subsequently purchased the interest of *Wallace,* and has intervened in this suit and enjoined the plaintiff's execution, alleging that *Harper* was without title to the slaves; that they belonged to *Evans,* when they were inventoried and sold as *Harper's* property; that the title to them, free from any incumbrance in favor of *Harper's* succession, was vested in *Walker* by the sheriff's sale; that the plaintiff's writ, issued after the intervenor became possessed of the slaves; and that he could only be proceeded against as a third possessor. The right to enforce the mortgage on the slaves only is in controversy. The cause was tried by a jury, who dissolved the injunction with damages, and the intervenor has appealed.

There is no error in the judgment appealed from. The evidence establishes clearly the title to the slaves in the succession of *Harper,* at the date of the sale to the defendant. *Walker* voluntarily obligated himself to produce the slaves whenever required, to be sold under the judgments either of *Stanbrough* or *Kinnard,* who it seems were engaged in a controversy in relation to their respective rights upon the slaves. This contest was in the nature of a pact of non-alienation. *Pierse* acquired the rights of *Walker* to the slaves, and incurred all the obligations of the latter in relation to their delivery, when he became the purchaser. Of these he cannot plead ignorance, having appeared at the sale of *Walker's* succession, and forbidden the adjudication as being in violation

of the rights of *Harper's* succession. The bond of *Walker* is obligatory on the <span style="float:right">Stanbrough<br>*v.*<br>Evans.</span>
intervenor, who cannot claim to be treated as a third possessor, and require the
plaintiff to resort to an hypothecary action, in order to enforce his mortgage.

*Judgment affirmed.*